UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

ARTEISHA HARRIS,

                                                                              **REPORT AND**
                                                                              **RECOMMENDATION**
                        Plaintiff,
                                                                                 11-CV-1497
                                                                                  (DNH/VEB)
            V.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security[1],

                        Defendant.

_____

## I. INTRODUCTION

In May of 2010, Plaintiff Arteisha Harris' applied for child's insurance benefits and

Supplemental Security Income ("SSI") benefits under the Social Security Act.  Plaintiff

alleges that she has been unable to work since April of 2010 due to attention deficit

hyperactivity disorder ("ADHD") and oppositional defiant disorder. The Commissioner of

Social Security denied Plaintiff's applications.

Plaintiff comes now before the court as an adult, by and through her attorneys,

Olinsky Law Group, Brandon W. Sawyer, Esq., of counsel, commenced this action seeking

judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383

(c)(3).

On March 22, 2013, the Honorable Gary L. Sharpe, Chief United States District

Judge, referred this case to the undersigned for a Report and Recommendation pursuant

_____

[1]On February 14, 2013, Carolyn W. Colvin took office as Acting Social Security Commissioner.
The Clerk of the Court is directed to substitute Acting Commissioner Colvin as the named defendant in this
case pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure .

to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 24).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

Plaintiff applied for benefits on May 7, 2010, alleging disability beginning on April 1, 2010. (T at 159, 163, 173).[2]  The applications were denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on June 22, 2011, in Syracuse, New York, before ALJ Susan Wakshul. (T at 15).[3] Plaintiff appeared with her attorney and testified. (T at 20-33).  Plaintiff's mother, Carol Harris, also appeared and testified. (T at 34-44).  Melissa Glannon, a vocational expert, appeared and testified by telephone. (T at 44-50).

On July 28, 2011, ALJ Wakshul issued a written decision finding that Plaintiff was not disabled, as defined under the Social Security Act, and was therefore not entitled to benefits. (T at 55-69).  The ALJ's decision became the Commissioner's final decision on November 16, 2011, when the Social Security Appeals Council denied Plaintiff's request for review. (T at 1-5).

Plaintiff, through counsel, timely commenced this action on December 20, 2011. (Docket No. 1).  The Commissioner interposed an Answer on April 23, 2012. (Docket No. 7).  Plaintiff filed a supporting Brief on June 6, 2012. (Docket No. 11).  The Commissioner filed a Brief in opposition on August 22, 2012. (Docket No. 16). Plaintiff filed an Amended Brief on September 14, 2012. (Docket No. 22).  The Commissioner filed a Reply Brief on

---

[2]Citations to "T" refer to the Administrative Transcript.  (Docket No. 8).

[3]The ALJ presided via videoconference from Baltimore, Maryland. (T at 17).

September 28, 2012. (Docket No. 23).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[4]

For the reasons that follow, it is recommended that the Commissioner's motion be denied, Plaintiff's motion be granted, and this case be remanded for further proceedings.

## III. DISCUSSION

### A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. <u>See</u> 42 U.S.C. §§ 405(g), 1383(c)(3); <u>Wagner v. Sec'y of Health & Human Servs.</u>, 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. <u>Johnson v. Bowen</u>, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); <u>see</u> <u>Grey v. Heckler</u>, 721 F.2d 41, 46 (2d Cir.1983); <u>Marcus v. Califano</u>, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as

---

[4]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. <u>See</u> <u>Rutherford v. Schweiker</u>, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." <u>Rosado v. Sullivan</u>, 805 F. Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." <u>Valente v. Sec'y of Health & Human Servs.</u>, 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. <u>See</u> 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[5]

---

[5]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The fifth and final step of the inquiry is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.      Analysis**

**1.      Commissioner's Decision**

The ALJ noted that because Plaintiff filed for benefits after attaining age 18, her claim for child's insurance benefits would be evaluated under the adult standards of disability. (T at 58).   The ALJ further indicated that, pursuant to § 202 (d) of the Social Security Act, Plaintiff could only receive child's insurance benefits if she became disabled

---

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

before turning 22.[6] (T at 59).

The ALJ found that Plaintiff had not engaged in substantial gainful activity since April 1, 2010, the alleged onset date. (T at 60). The ALJ concluded that Plaintiff had the following severe impairments, as defined under the Social Security Act: attention deficit disorder, oppositional defiant disorder, emotional disturbance, and substance abuse. (T at 60). However, the ALJ found that Plaintiff's impairments did meet or medically equal one of the listed impairments set forth in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 61-62).

The ALJ determined that Plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels, except that she was limited to simple, routine, repetitive tasks in a low-stress environment (defined as requiring only occasional decision making, and only occasional changes in the work setting, use of judgment, and supervision). (T at 62-65). The ALJ found that Plaintiff had no past relevant work. (T at 65).

Considering Plaintiff's age (17 years old on the alleged onset date), education (high school), work experience (no past relevant work), and residual functional capacity (no exertional limitations, with non-exertional limitations as outlined above), the ALJ concluded that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 65-66). As such, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, between the alleged onset date (April 1, 2010) and the date of the ALJ's decision (July 28, 2011). (T at 66). As noted above, the ALJ's decision became the Commissioner's final decision on November 16, 2011, when the

---

[6]Plaintiff does not challenge these aspects of the ALJ's decision.

Appeals Council denied Plaintiff's request for review. (T at 1-5).

## 2. Plaintiff's Arguments

Plaintiff challenges the Commissioner's decision. She offers three (3) principal arguments in support of her position. First, Plaintiff contends that the ALJ did not properly assess the opinion provided by her treating physician. Second, Plaintiff challenges the ALJ's credibility determination. Third, Plaintiff argues that the ALJ's step 5 analysis was flawed. This Court will address each argument in turn.

### a. Treating Physician

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[7]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. In this regard, the ALJ should consider the following factors when determining the proper weight to afford the opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. §

---

[7]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

404.1527(d)(1)-(6); see also Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

In September of 2010, Dr. Joseph Zollo, Plaintiff's treating physician completed a Medical Source Statement.[8] Dr. Zollo diagnosed attention deficit disorder, reading disorder, and a mathematics disorder. (T at 302). He reported that Plaintiff exhibited the following symptoms: appetite disturbance with weight change, thoughts of suicide/harming others, difficulty thinking or concentrating, impulsive and damaging behavior, hyperactivity, impairment in impulse control, emotional lability, and easy distractibility. (T at 302). Dr. Zollo opined that Plaintiff was unable to meet competitive standards with regard to completing a normal workday and workweek without interruptions from psychologically based symptoms. (T at 303). He found that Plaintiff was seriously limited, but not precluded, from sustaining an ordinary routine without special supervision, working in coordination with or proximity to others without being unduly distracted, making simple work-related decisions, performing at a consistent pace without an unreasonable number and length of rest periods, responding appropriately to changes in a routine work setting, and dealing with normal work stress. (T at 303).

Dr. Zollo indicated that Plaintiff had a limited, but satisfactory, ability to remember work-like procedures, understand and remember very short and simply instructions, carry out very short and simple instructions, maintain attention for two hour segments, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without unduly distracting them or

---

[8]The statement was co-signed by Kay Levering, a treating social worker.

exhibiting behavioral extremes, and be aware of normal hazards and take appropriate precautions. (T at 303). Dr. Zollo indicated that Plaintiff might need extra supervision to assist with attention and understanding. He described her as "[e]asily distracted and impulsive" and opined that educational and vocational supports would be needed for Plaintiff to be successful. (T at 303).

Dr. Zollo rated Plaintiff's ability to interact appropriately with the general public and maintain socially appropriate behavior as "limited, but satisfactory." (T at 304). He found her ability to travel in unfamiliar places seriously limited, but not precluded, and described Plaintiff's ability to use public transportation as limited, but satisfactory. Dr. Zollo indicated no limitation with respect to Plaintiff's capacity to adhere to basic standards of neatness and cleanliness. (T at 304). He estimated that Plaintiff would miss about 2 days per month from work due to her impairments or treatment. (T at 304).

The ALJ afforded Dr. Zollo's opinion "little weight," finding it "inconsistent with [the] evidence of record as a whole." (T at 64). In addition, the ALJ noted that Dr. Zollo's opinion was not supported by treatment records following the alleged onset date. (T at 64).

This Court finds that the ALJ did not properly assess Dr. Zollo's opinion or adequately develop the record. First, the treatment records from the period immediately preceding the alleged onset date were consistent with Dr. Zollo's assessment of disabling limitations. In December of 2009, Dr. Zollo assigned a Global Assessment Functioning ("GAF")[9] score of 45. (T at 261). "A GAF range of 41-50 indicates that the individual has a 'serious impairment in one of the following: social, occupational, or school functioning.'" Pollard v. Halter, 377

[9]The GAF "ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. " Pollard v. Halter, 377 F.3d 183, 186 (2d Cir. 2004).

F.3d 183, 186 n.1 (2d Cir. 2004). Although treatment notes from late 2009 and early 2010 described Plaintiff's symptoms as "stable and controlled" (T at 252, 254), Dr. Zollo assigned the same GAF score (45) in March of 2010. (T at 262).

Second, the ALJ afforded too much weight to the non-examining State Agency review consultant. The medical consultant, identified as "T. Harding," opined that Plaintiff was not significantly limited with regard to her ability to remember locations and work-like procedures or to understand and remember very short and simple instructions. (T at 292). The consultant assessed a markedly limited ability to understand, remember, and carry out detailed instructions. (T at 292). The consultant found no significant limitation with regard to carrying out very short and simple instructions, maintaining attention and concentration for extended periods, sustaining an ordinary routine without special supervision, and working in coordination with or proximity to others without being distracted by them. (T at 292).

The consultant opined that Plaintiff was not significantly limited with regard to her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. (T at 292). Plaintiff was also found to have no significant limitation with regard to completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods. (T at 293). The consultant noted no significant limitations with regard to social interaction or adaptation skills. (T at 293). In sum, the consultant found that Plaintiff "may have difficulty with complex tasks and instructions, but maintain[ed] [her] ability to perform a range of entry level work." (T at 294).

The ALJ found the consultant's assessment "generally consistent with the evidence of record" and gave it "great weight." (T at 63). However, the consultant's opinion was

rendered in June 2010 and, thus, did not include a review of the detailed assessment provided by Dr. Zollo (and co-signed by Plaintiff's social worker) in September of 2010. Moreover, although a non-examining consultant's opinion may constitute substantial evidence when supported by the record as a whole, the opinion cannot, by itself, support the Commissioner's decision. See Griffith v. Astrue, 08-CV-6004, 2009 WL 909630 at *9 (W.D.N.Y. July 27, 2009) ("The State Agency Officials' reports, which are conclusory, stale, and based on an incomplete medical record, are not substantial evidence"); see also McClean v. Astrue, 04-CV-1425, 2009 WL 1918397, at *4 n. 2 (E.D.N.Y. June 30, 2009).

Third, the ALJ placed too great an emphasis on apparent improvement in Plaintiff's condition during the spring of 2010. In March of 2010, upon Plaintiff's admission to St. Joseph's Hospital, Dr. John Harkulich, Ph.D. assigned a GAF score of 60 (T at 271), which indicates only moderate difficulty in social or occupational functioning. See Anderson v. Astrue, No. 07-CV-4969, 2009 WL 2824584, at *3 n.3 (E.D.N.Y. Aug. 28, 2009); Snyder v. Astrue, No. 07-CV-0763, 2009 WL 3381556, at *2 n.2 (N.D.N.Y. Oct. 16, 2009)("A GAF of 51 to 60 signifies 'moderate symptoms (e.g., flat affect and circumstantial speech occasional panic attacks) or moderate difficulty in social, occupational or school functioning (e .g., few friends, conflicts with peers or co-workers).'")(quoting Diagnostic and Statistical Manual of Mental Disorders-IV-TR, p. 34). A treatment note from May of 2010 assigned the same GAF score (60), with Plaintiff demonstrating "good" insight and judgment and with her symptoms "stable and controlled." (T at 264).

The ALJ considered this reported improvement during the spring of 2010 as establishing a "stable and upward trend of [Plaintiff's] symptoms." (T at 64). The ALJ then used the inconsistency between this "trend" and Dr. Zollo's September 2010 opinion to

discount the opinion. (T at 64). However, the ALJ does not appear to have considered that (a) the "trend" might have been only a temporary improvement or (b) that the "trend" might not have represented as dramatic an improvement in Plaintiff's overall functioning as it appeared. In other words, the ALJ rejected Dr. Zollo's opinion as inconsistent with the "trend" theory, rather than considering it as evidence contradicting that theory. The ALJ also never re-contacted Dr. Zollo to explain the inconsistency between the improvement "trend" identified by the ALJ and the September 2010 opinion. This failure to develop the record, as discussed further below, was also an error.

Fourth, the ALJ failed to adequately develop the record. The ALJ has an "affirmative duty to develop the record and seek additional information from the treating physician, *sua sponte*, even if plaintiff is represented by counsel" to determine upon what information the treating source was basing his opinions. Colegrove v. Comm'r of Soc. Sec., 399 F. Supp.2d 185, 196 (W.D.N.Y.2005); see also 20 C.F.R. §§ 404.1212(e)(1), 416.912(e) (1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source ... does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). Failure to re-contact is error and is a reason to remand. See Taylor v. Astrue, No. CV-07-3469, 2008 WL 2437770, at *3 (E.D.N.Y. June 17, 2008) (finding it error for the ALJ to not re-contact Plaintiff's treating physician when he determined that the physician's opinion was "not well-supported by objective medical evidence").

Here, as outlined above, the ALJ discerned a "trend" with regard to Plaintiff's symptoms in the spring of 2010, noted the inconsistency between that "trend" and Dr. Zollo's September 2010 opinion, and then discounted the treating physician's opinion based upon the inconsistency and the lack of "any treatment records which would dispute the stable and

upward trend of [Plaintiff's] symptoms." (T at 64).

This Court notes, with frustration, that it appears the ALJ held the administrative record open to obtain additional records from Dr. Zollo based upon a promise from Plaintiff's counsel that she would obtain those records. (T at 19, 58). It appears, for reasons not clear from the record, that counsel never submitted the additional documents, did not request additional time to obtain them, and did not ask for the ALJ's assistance in obtaining the records (by, for example, asking for a subpoena). (T at 58).

Counsel surely has an independent obligation to vigorously represent his or her client and to obtain and provide relevant documents, particularly when counsel has expressly agreed to do so and has obtained an extension of time based upon that representation.

Moreover, the Second Circuit (in an unpublished opinion) and at least two district courts have indicated that the ALJ may, under certain circumstances, satisfy the duty to develop the record by relying on claimant's counsel to obtain additional medical documentation. See Rivera v. Commissioner of Social Sec., 728 F. Supp.2d 297, 330 (S.D.N.Y. 2010)("Courts do not necessarily require ALJs to develop the record by obtaining additional evidence themselves, but often permit them to seek it through the claimant or his counsel . . . Accordingly, the ALJ's request that plaintiff's attorney obtain the recent treatment records from Lincoln Hospital fulfilled his obligations with regard to developing the record.")(citations omitted); Pagan v. Astrue, No. 11-CV-825, 2012 WL 2206886, at *8 (N.D.N.Y. June 14, 2012)(holding that ALJ satisfied duty to develop record by granting counsel additional time to obtain evidence and providing opportunity to request a further extension); see also Jordan v. Commissioner of Social Security, 42 Fed. Appx. 542, 543, 2005 WL 2176008, at *1 (2d Cir. Sep't 8, 2005)(unpublished).

13

However, this Court is mindful that district courts in the Second Circuit have reached conflicting conclusions on this issue and the Court of Appeals has certainly shown a willingness to interpret broadly the ALJ's duty to develop the record, even in cases where the claimant is represented by counsel. See Vincent v. Comm'r of Social Security, 651 F.3d 299, 305 (2d Cir. 2011)("The duty of the ALJ, unlike that of a judge at trial, is to 'investigate and develop the facts and develop the arguments both for and against the granting of benefits.'")(citations omitted); see also Newsome v. Astrue, 817 F. Supp.2d 111, 137 (E.D.N.Y. 2011)("The fact that the ALJ requested additional information from the Plaintiff's attorney and did not receive that information does not relieve the ALJ of his duty to fully develop the record."); Ayer v. Astrue, No. 11- CV-83, 2012 WL 381784, at *6 (D. Vt. Feb. 6, 2012)("The fact that the ALJ requested additional medical records from [claimant's] attorney at the administrative hearing does not relieve him of his duty to fully develop the record.").

Here, given the authority outlined above, this Court is compelled to conclude that the ALJ's reliance on claimant's counsel to obtain the treating physician's records was inadequate.[10] The ALJ's assessment of Plaintiff's residual functional capacity was based on his discernment of a "stable and upward trend" in Plaintiff's symptoms. Dr. Zollo's September 2010 opinion contradicted the ALJ's "trend" hypothesis. The ALJ's decision to discount Dr. Zollo's opinion, which was based in large part upon the lack of supporting

_____

[10]This Court finds this conclusion appropriate given the legal authority, but nevertheless regrettable. It appears one of the following occurred with regard to counsel's promise to obtain additional records from Dr. Zollo: (1) counsel never requested the records, (2) counsel requested the records, Dr. Zollo failed to respond, and counsel did not follow-up with a request for additional time or an ALJ subpoena, or (3) the records were requested and obtained by counsel, but were never provided to the ALJ, for reasons unknown. It would certainly seem that some explanation should be provided by counsel with regard to this question, particularly if counsel intends to request an award of attorneys' fees in connection with this case.

treatment notes from the spring/summer of 2010, was thus fundamental to his residual functional capacity assessment. Thus, if the ALJ is understood to have an "independent" and "affirmative" duty to develop the record, that duty must include seeking out additional documentation before discounting the treating physician's opinion, even where counsel has previously promised (but failed) to provide the documents.

Fifth, the ALJ did not adequately account for the fact that the September 2010 opinion was co-signed by Dr. Zollo and Ms. Levering, a treating social worker. The fact that the assessment was adopted by both of these key treating providers was significant and not sufficiently considered by the ALJ. Although a social worker's opinion is not considered a "medical opinion,"[11] it is nevertheless "important and should be evaluated on key issues such as impairment severity and functional effects." SSR 06-03p, 2006 WL 2329939, at *3 (Aug. 9, 2006); see also White v. Comm'r, 302 F. Supp.2d 170, 174-76 (W.D.N.Y.2004) (reversing where the ALJ failed to give appropriate weight to social worker, who had a regular treatment relationship and whose diagnosis was consistent with the treating psychiatrist); Pogozelski v. Barnhart, No. 03-CV-2914, 2004 WL 1146059, at *12 (E.D.N.Y. May 19, 2004) (finding that "some weight should still have been accorded to [the therapist's] opinion based on his familiarity and treating relationship with the claimant"); Allen v. Astrue, 05-CV-0101, 2008 WL 660510, at *9 (N.D.N.Y. Mar.10, 2008) (remanding because ALJ did not evaluate the treating therapist's opinion); Bergman v. Sullivan, No. 88-CV-513, 1989 WL

---

[11]The Social Security Regulations provide that "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of ... impairment(s)...." Diaz, 59 F.3d at 313 (citing 20 C.F.R. § 404.1527(a)(2)). Section 404.1513(a) lists five categories of "acceptable medical sources," none of which mentions therapists or social workers. Rather, therapists and social welfare agency personnell are expressly listed in a separate section, under "other sources" whose "[i]nformation ... may ... help us to understand how [the] impairment affects your ability to work." Id. (citing 20 C.F.R. § 404.1513(e) (1994)).

280264, *3 (W.D.N.Y. Aug. 7, 1989) (holding that treating social worker is "a non-medical source whose opinion concerning the nature and degree of plaintiff's impairment is not only helpful, but critically important, since he is the only treating source").

Accordingly for the foregoing reasons, this Court finds that a remand is necessary for further development of the record and reconsideration of Dr. Zollo's opinion.

### b. Credibility

Courts in the Second Circuit have determined a claimant's subjective complaints are an important element in disability claims, and they must be thoroughly considered. See Ber v. Celebrezze, 332 F.2d 293, 298, 300 (2d Cir.1964). Further, if a claimant's testimony of pain and limitations is rejected or discounted, the ALJ must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F. Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F. Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

16

First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....

Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1. [Plaintiff's] daily activities;
2. The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3. Precipitating and aggravating factors;
4. The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5. Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6. Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7. Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

In this case, Plaintiff testified as follows:

She graduated from high school in 2010 and attended one semester of community college. (T at 23). Her financial aid was cancelled after she failed one of her classes. (T at 23-24). She received special education services in high school. (T at 25). Her ADHD is treated with prescription medication, which initially caused headaches and vomiting. (T at 26-27). She has anger management problems. (T at 29). She would be able to remember and complete a list of five simple tasks. (T at 30). She is able to attend to her personal needs. (T at 31). Reading, playing the piano, cooking, watching television, and singing are hobbies. (T at 31). She cares for a pet fish. (T at 32). In her written application for benefits, Plaintiff reported that she was unable to stay focused, experienced fatigue, and had trouble with interpersonal relationships. (T at 186).

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they were inconsistent with his residual functional capacity assessment. (T at 63).

The ALJ relied on his discernment of an improvement "trend" in Plaintiff's condition as a reason for discounting Plaintiff's testimony. (T at 63). This "trend" analysis was flawed for the reasons outline above. In particular, it was contradicted by the September 2010 opinion adopted by Dr. Zollo and Ms. Levering, which the ALJ did not adequately address. In addition, the ALJ cited the fact that Plaintiff attended community college as evidence of her ability to perform basic work activities. (T at 64). The ALJ indicated that Plaintiff stopped attending college because of "her financial situation rather than an inability to handle its demands." (T at 64). However, Plaintiff testified that she lost her financial aid

18

after failing one of three courses she took during her single semester. (T at 23-24). The ALJ also cited Plaintiff's ability to perform basic activities (such as feeding her fish) as evidence of an ability to perform basic work-activities. (T at 64). However, it is well-settled that "'[s]uch activities do not by themselves contradict allegations of disability,' as people should not be penalized for enduring the pain of their disability in order to care for themselves." Woodford v. Apfel, 93 F. Supp.2d 521, 529 (S.D.N.Y. 2000); see also Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) ("We have stated on numerous occasions that 'a claimant need not be an invalid to be found disabled' under the Social Security Act.").

Accordingly, the question of Plaintiff's credibility should be revisited on remand after further development of the record.

### c.     Step Five Analysis

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in Zorilla v. Chater, 915 F. Supp. 662, 667 (S.D.N.Y.1996) as follows:

> In meeting [his] burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

Id.

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling." Id. at 667 n. 2; see 20 C.F.R. § 404.1567(a). Upon consideration of the claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

If a claimant's work capacity is significantly diminished by non-exertional impairments beyond that caused by his or her exertional impairment(s), then the use of the Grids may be an inappropriate method of determining a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert. See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir.1996); Bapp v. Bowen, 802 F.2d 601, 604-605 (2d Cir.1986).

In the present case, the ALJ concluded that Plaintiff's work capacity had been compromised by nonexertional limitations. (T at 65). As such, the ALJ elicited the testimony of a vocational expert by presenting hypothetical questions incorporating functional limitations. The ALJ then relied on the vocational expert's responses in finding,

at step five, that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. (T at 65-66).

Plaintiff challenges the validity of the hypotheticals presented to the vocational expert. The question of whether a hypothetical given to a vocational expert is appropriate depends on whether the hypothetical fully encompasses the claimant's limitations. Magee v. Astrue, No. 5:05-CV-413, 2008 WL 4186336, at *20 (N.D.N.Y. Sept. 9, 2008) (citing Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 799 (6th Cir.1987)). "If the factors set forth in the hypothetical are supported by substantial evidence, then the vocational expert's testimony may be relied upon by the ALJ in support of a finding of no disability." Id.

"[T]he ALJ must present a hypothetical that incorporates all of a claimant's impairments." Salmini v. Astrue, No. 3:06–CV–458, 2009 WL 1794741, *11 (N.D.N.Y. June 23, 2009) (citation omitted). If the ALJ poses "hypothetical questions [that] do 'not include all of a claimant's impairments, limitations and restrictions, or [are] otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability.'" Id. (quotation omitted).

The hypothethicals presented to the vocational expert here assumed that Plaintiff could meet competitive standards with regard to completing a normal workday and workweek without interruptions from psychologically based symptoms. (T at 48-49). This assumption is contradicted by the assessment co-signed by the treating physician and a treating social worker. (T at 303). For the reasons outlined above, the ALJ did not properly consider or develop the record with regard to that assessment. As such, the step five analysis will necessarily need to be revisited once that assessment is reconsidered after

further development of the record.

**3.    Remand**

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).  Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.


**IV. CONCLUSION**

For the foregoing reasons, it is respectfully recommended that the Commissioner's motion be denied, Plaintiff's motion be granted,  the decision of the Commissioner be reversed, and this case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405 (g) for further administrative proceedings consistent with this Report and Recommendation.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

22

Dated:   May 2, 2013
         Syracuse, New York




## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C.

§636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See <u>Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge

Dated:  May 2, 2013

Syracuse, New York